COMMISSIONER OF REVENUE vs. SCA DISPOSAL SERVICES
OF NEW ENGLAND, INC.

Suffolk.  April 8, 1981. — June 5, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Taxation,* Sales and use tax.

A transfer of motor vehicles occurring as the result of a statutory merger
of four wholly owned subsidiaries of a corporation into a fifth wholly
owned subsidiary did not involve any such consideration as to warrant
imposition of a use tax under G. L. c. 64I, § 2 (*a*), notwithstanding
the circumstances that the merger agreement, which was under seal,
recited that the reorganization was made "in consideration of the ben-
efits to be derived from such a plan"; that the parent corporation may
have received some Federal tax benefit from the merger; and that the
transferee agreed to assume the liabilities of the merged corporations.
[734-738]

APPEAL from a decision of the Appellate Tax Board.

*Linda M. Irvin,* Assistant Attorney General, for Commis-
sioner of Revenue.

*Jane D. Kaplan* for the taxpayer.

WILKINS, J.  As a result of an agreement of merger,
entered into pursuant to G. L. c. 156B, § 78, and filed with
the Secretary of the Commonwealth on April 6, 1972, four
wholly owned subsidiaries of SCA Services, Inc., were
merged into a fifth wholly owned subsidiary, SCA Disposal
Services of New England, Inc. (SCA), the appellee in this
case.  The horizontal merger of the subsidiaries, which was
prompted by licensing requirements of the Department of
Public Utilities, resulted in the transfer to SCA of motor
vehicles from three of the liquidated subsidiaries.  Each
subsidiary was engaged in the business of waste removal.
The Commissioner of Revenue's (commissioner) predeces-
sor, the State Tax Commission (commission) (see St. 1978,

c. 514, §§ 5 and 287), assessed a use tax as a result of the transfer of the vehicles. SCA paid the tax and sought an abatement which, in effect, the commission denied. SCA then appealed to the Appellate Tax Board (board). After this court's determination of a procedural issue in SCA's favor (see *SCA Disposal Servs. of New England, Inc.* v. *State Tax Comm'n,* 375 Mass. 338 [1978]), the board in a carefully reasoned decision granted the abatement, concluding that nothing of value had been given and no taxable transaction had occurred. The commissioner has appealed to this court. We affirm the decision of the board.

The commissioner asserts that the transfer of ownership of the motor vehicles created an obligation to pay the excise imposed, pursuant to G. L. c. 64I, § 2, inserted by St. 1967, c. 757, § 2, on the use in the Commonwealth of tangible personal property "purchased" from any vendor for use within the Commonwealth.[1] A purchase, for the purposes of the use tax, is defined as "[a]ny transfer of title or possession, or both . . . in any manner or by any means whatsoever, of tangible personal property *for a consideration*" (emphasis added). G. L. c. 64I, § 1 (2) (*a*), inserted by St. 1967, c. 757, § 2. The use tax is a percentage of the sales price of the property. G. L. c. 64I, § 2.

The battle lines in the case are drawn on the question whether there was consideration for the transfer within the meaning of the words "for a consideration" in G. L. c. 64I, § 1 (2) (*a*). The merger, and the transfer of ownership of the motor vehicles, took place by operation of law. G. L. c. 156B, § 80 (*a*) (5). There was no sales price as such. The merger agreement recited that the plan of reorganization

---

[1] If a sales tax is payable under G. L. c. 64H, no use tax is imposed. G. L. c. 64I, § 7 (*a*). As a casual sale, the transfers of the motor vehicles were exempt in any event from the sales tax. G. L. c. 64H, § 6 (*c*). Section 6 (*c*) specifically provides, however, that the exemption from the sales tax is not to be construed to exempt casual sales of motor vehicles from the use tax imposed under G. L. c. 64I. Under G. L. c. 64I, § 7 (*b*), the purchaser of a motor vehicle is subject to a use tax except when the purchaser is a close relative of the seller.

was made "in consideration of the benefits to be derived from such a plan" and was under seal. We do not read G. L. c. 64I, § 1 (2) (a), as incorporating, undiluted, the concept of consideration as applied in the law of contracts to determine whether there was consideration sufficient to support a contract. See *Long Mfg. Co.* v. *Johnson,* 264 N.C. 12, 17-18 (1965). A seal and the recitation of consideration often serve as technical substitutes for actual consideration moving from one party to another. See *Johnson* v. *Norton Hous. Auth.,* 375 Mass. 193, 194-195 (1978). In such situations, there is no consideration that would produce a "sales price" within the meaning of the use tax. The surviving subsidiary obviously received something of value, but there was no transfer for a consideration flowing to the putative sellers merely because of the use of a seal or the recitation of consideration.

The commissioner argues that the appellee, the surviving subsidiary, could have purchased the vehicles directly from the subsidiaries whose motor vehicles were to be transferred to the appellee and, in such a case, a use tax would clearly have been payable. The argument is that consideration should be found in the Federal tax advantage that flowed from the tax-free reorganization under § 368(a)(1) of the Internal Revenue Code. The transferring subsidiaries, the alleged sellers, were dissolved at the moment the merger occurred. They received no tax benefit from the transaction. If the tax benefit to the parent corporation can be considered in determining whether there was a transfer for consideration, it hardly produces a sales price on which a tax could be calculated. Allocation of the tax benefit among transferred assets would be a most difficult task. There is no implied contract of sale in a statutory merger. See *Frank Amodio Moving & Storage Co.* v. *Connelly,* 144 Conn. 569, 571-572 (1957). In any event, the tax benefit received by a parent through a tax-free reorganization, lawfully adopted to avoid the imposition of Federal income tax, is not consideration for the transfer of motor vehicles within the meaning of G. L. c. 64I, § 1 (2) (a). Similarly, the fact that the

merger was undertaken voluntarily to comply with requirements of the Department of Public Utilities does nothing to establish that there was consideration for the transfer of motor vehicles to SCA.

The commissioner argues that SCA assumed the debts and liabilities of the merged corporations. The merger agreement so provided. The board found that no debts were extinguished by the merger. Indeed, SCA, the surviving corporation, is deemed by law to have assumed all liabilities and obligations of each of the merged corporations. G. L. c. 156B, § 80 (*b*). There is no evidence, and no finding, that the liabilities assumed exceeded the value of the assets transferred. If the commissioner based the imposition of a use tax on the theory that a net benefit accrued to the subsidiaries merging into SCA from the transfer of assets and assumption of liabilities, evidence of that fact, or at least an argument to that effect (putting SCA on notice), should have been presented before the board. Even if it had been, there would have remained the fact that each merged corporation ceased to exist at the moment of merger, and, assuming a benefit to a nonseller, here the parent, could constitute consideration for the transfer of the motor vehicles between its subsidiaries, the fact is that the parent obtained no benefit from SCA's assumption of the liabilities of the corporations ceasing to exist. After the merger, the parent owned one corporation with the same assets and liabilities as those owned collectively by its subsidiaries before the merger.

Our conclusion that the transfer of the motor vehicles pursuant to the statutory merger of wholly owned subsidiaries does not involve consideration for the transfer is supported by a policy statement issued on November 21, 1966, within nine months of the adoption of the first sales and use tax law. See St. 1966, c. 14. In a memorandum, the Commissioner of Corporations and Taxation said that "[w]here a transfer of a motor vehicle is made from a *wholly-owned subsidiary to the parent* as a result of a merger, no taxable event occurs" (emphasis in original). If a statute is ambigu-

ous, a nearly contemporaneous administrative interpretation of the statute is entitled to weight in construing it. See *Lowell Gas Co.* v. *Commissioner of Corps. & Taxation,* 377 Mass. 255, 262 (1979); *Ace Heating Serv., Inc.* v. *State Tax Comm'n,* 371 Mass. 254, 256 (1976).

The commissioner is hard pressed to find a meaningful ground for distinguishing between (a) exempting from the use tax a transfer by merger of a motor vehicle from a wholly owned subsidiary to its parent, and (b) not exempting a transfer by merger of a motor vehicle from one wholly owned subsidiary to another wholly owned subsidiary. We find no more consideration, within the meaning of the word in G. L. c. 64I, § 1 (2) (*a*), in a transfer by merger of a motor vehicle between wholly owned subsidiaries in the circumstances of this case than exists in the transfer by merger of a motor vehicle from one wholly owned subsidiary to its parent.

*Decision of the Appellate Tax
Board affirmed.*