ANDREW, J.T.C.
In this state sales tax case, there are two issues presented for determination, namely (1) whether the title transfer of a motor vehicle by a sole shareholder to his wholly-owned corporation, L.B.D. Construction, Inc. (LBD), plaintiff herein, constituted a “retail sale” pursuant to N.J.S.A. 54:32B-2(e), -2(f), and (2) if there was a retail sale, what should be the measure of the sales tax imposed by defendant, Director, Division of Taxation (Director) at the time of the transfer.
The following facts were stipulated by the parties. Mark Dubrow, sole shareholder and president of LBD purchased a 1983 Porsche automobile on March 29, 1983 from a car dealer for $35,997 less $23,500 which was credited to him for a trade-in. In his own name, Dubrow borrowed $18,960.65 from the First National Bank of Edison out of which he paid the *342 remainder of the purchase price, i.e., $12,499,[1] sales tax of $749.88[2] and the required license fees to the car dealer. The balance of the loan proceeds, i.e., $5,672.44, was deposited by Dubrow into the corporation’s bank account. Although title to the car was registered in Dubrow’s name, LBD apparently made the monthly payments to the bank and listed the vehicle as corporate property on its business ledgers.
On December 19,1983, in order to place the title of the car in the entity which Dubrow alleged was the true owner and to preserve LBD’s corporate tax deductions for the vehicle, Du-brow applied to the Department of Motor Vehicles for a change of title to reflect LBD as the owner. Upon the advice of a motor vehicle department employee, the consideration on the registration form stated one dollar ($1) and the sales tax was listed as six cents ($.06). At the time of the reregistration of the car, no actual cash or stock changed hands between Du-brow and LBD in return for the change of title to the corporation’s name.
In addition, at the time of the title transfer, a new promissory note for $20,867.77 with the same bank was negotiated in the name of LBD. Dubrow signed on behalf of the corporation and also individually endorsed the note involved in this second loan agreement. In the disposition of the proceeds of this second loan, $15,452.53 was deducted to pay off the then existing balance on Dubrow’s personal loan, and the remainder of $5,415.24 was credited to LBD’s bank account. On December 13, 1984, LBD was assessed $1,799.94 (apparently based on a fair market value of the Porsche of approximately $30,000) by *343 the Division of Taxation’s casual sales section for failure to pay the full amount of the sales tax due at the time of reregistration.
Originally, the Director had based plaintiff’s sales tax liability on the N.A.D.A. fair market value (“blue book” value) of the car at the time of reregistration and also included interest and penalty. LBD paid the original tax deficiency assessment on the fair market value of the car and then timely protested the Director’s determination. In a telephone conference on March 18, 1985, the Director reaffirmed his original deficiency assessment. Subsequently, plaintiff appealed to the Tax Court claiming a total tax refund of $2,321.65 (tax of $1,799.94 plus interest of $431.76 and penalty of $89.95). The Director has since modified his position and now contends that the proper measure of the sales tax is the amount of the outstanding balance of the note paid in full by LBD at the time of the transfer of title by Dubrow to LBD, to wit, $15,452.53.
To support its contention that there was no taxable event in the present case, plaintiff argues that there was no transfer of tangible personal property because LBD treated the car as a corporate asset from the time of its purchase by Dubrow and thus had equitable ownership from the time of original purchase. Further, plaintiff alleges that there was no consideration paid and even if arguendo there was consideration, the tax base to be utilized by the Director cannot exceed the actual stated cash price of $1 on the car registration forms. In the alternative, plaintiff claims the total consideration should not exceed $9,780.09 (the total of the second loan of $20,867.77 less the two cash deposits ($5,672.44 and $5,415.24) to the corporation bank account). Finally, plaintiff asserts that the special treatment accorded corporate transfers, in general, under N.J. S.A. 54:32B-2(e)(3)(B) and (E), evince a legislative intent to exclude all corporate transfers in the nature of contributions to capital, whether they are effected in the initial stages of corporate formation or later when the business is an ongoing entity.
*344 Conversely, defendant replies that the reregistration of the automobile’s title in LBD’s name constituted a taxable transfer of tangible personal property because of the separate and distinct legal status of both parties involved. Moreover, defendant insists that the discharge of Dubrow’s loan by plaintiff at reregistration time is legally sufficient to meet the benefit-detriment definition of consideration. Lastly, defendant urges that the value of the outstanding balance of the first bank note paid in full by LBD at the time of transfer of title is “an objective indicia of value” that should establish the appropriate measure of plaintiff’s sales tax liability. N.J.S.A. 54:32B-19; N.J.A.C. 18:24-7.6.
In New Jersey, a sales tax is imposed on “the receipts from every retail sale of tangible personal property----” N.J.S.A. 54:32B-3(a). A “sale” is further defined as “[a]ny transfer of title or possession ... for a consideration____” N.J.S.A. 54:32B-2(f). Moreover, the sales tax base is measured by a receipt that shows the sales price, “valued in money, whether received in money or otherwise.....” N.J.S.A. 54:32B-2(d). To insure that an adequate value base is placed on transferred property, N.J.S.A. 54:32B-19 clearly gives the Director statutory authority to use external indices to estimate the sales tax when he determines that the amount of sales tax reflected on the taxpayer’s return is incorrect or insufficient. . In addition the Director’s regulations directly parallel these statutory provisions for the assessment and collection of the sales tax. See N.J.A.C. 18:24-7.2, -7.6.[3]
Cognizant of the specific definitional language of the above legislative and regulatory provisions, this court must determine in the first instance whether there was (1) a transfer *345 and (2) if consideration supported the transfer. If a taxable “sale” did occur, then the second task is to decide what constitutes the appropriate measure for the sales tax.
Plaintiff’s first contention is that there was no transfer of property because, as an equitable owner of the car, LBD had not only treated the vehicle as a corporate asset on its books but had also remitted monthly payments to the bank from the time of the original purchase. Moreover, plaintiff asserts that Dubrow’s symbiotic relationship with the corporation as sole shareholder and owner negated any need for a transfer to LBD, and in purchasing the automobile he was acting on behalf of the corporation. Finally, relying on Daloisio v. Peninsula Land Co., 43 N.J.Super. 79, 127 A.2d 885 (App.Div.1956), plaintiff reasoned that a minority shareholder, if there was one, or a corporate creditor could have acted through a court of equity to force Dubrow as a corporate officer and fiduciary to change the title or make the car available for payment of corporate debts.
Plaintiff’s contentions and rationale to deny the existence of a transfer, the first requirement of a taxable “sale,” are unpersuasive for several reasons. First and foremost, plaintiff readily conceded in the stipulation of facts that “While title was taken in Mr. Dubrow’s name” in March 1983, he later “applied for a change in title to the Plaintiff.” Emphasis supplied. Even if plaintiff had not so stipulated, in the absence of some egregious conduct that indicated fraud or illegality, as was the case in Daloisio, supra, courts will generally uphold the doctrine of the corporate entity which characterizes the legal identity of the corporation as a distinct and separate entity from that of its shareholders. Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153 (1982). Furthermore, it is beyond the discretion of any court to indulge in suppositions and assumptions not indicative of the facts in the case. The court must make determinations and enter judgments based on the factual circumstances as they are not on what they might have been. *346 General Trading Co. v. Taxation Div. Director, 83 N.J. 122, 138, 416 A.2d 37 (1980).
Here, Dubrow and LBD are two separate legal entities. The only relevant factor that concerns the Director in imposing sales tax liability is who has legal, not equitable, title to the vehicle. See Seaview Demolition, etc. v. Taxation Div. Director, 4 N.J.Tax 541 (Tax Ct.1982), aff’d 6 N.J.Tax 254 (App. Div.1984) (plaintiff corporation could not avoid sales tax on the theory that an affiliated corporation was the same entity or agent for plaintiff); see also Somerset Apts. v. Director, Div. of Taxation, 134 N.J.Super. 550, 555, 342 A.2d 520 (App.Div.1975) (legal title determines whether property is includable in corporate net worth for corporation business tax purposes). In this case, legal title was originally taken by Dubrow and was then changed or transferred to LBD. Thus, under the plain language of the statute and plaintiffs own admission, the first requisite of a “sale” is undeniably met.
In substance, plaintiffs second argument is that there was no consideration involved in the transfer of title because there was no economic change in Dubrow’s financial position from before to after the transfer of the car. Plaintiff reasons that Dubrow was not better off economically because
his personal balance sheet showed the same net worth whether the net value of the auto was in his hands or in the corporation backing up the value of his stock ... The corporate promise to pay the debt had no value to him since it was backed by assets he already owned in an economic sense.
Consequently, plaintiff concludes, since Dubrow received nothing of actual measurable value when the car was transferred to LBD's name, the element of consideration needed to meet the definition in the word “sale” was absent and thus there was no taxable transaction.
The word “consideration” is not defined in the act. However, it is commonly understood that words in a statute having a well-defined common-law meaning are to be construed in the same sense under the statute when used in connection with the same or similar subject matter with which they were associated at common law. Mascola v. Mascola, 168 N.J.Su *347 per. 122, 126, 401 A.2d 1114 (App.Div.1979); 2A Sutherland, Statutory Construction (4 ed. 1973), § 50.03 at 277.
In legal parlance, “consideration is the price bargained for and paid for a promise.” Continental Bank of Pa. v. Barclay Riding Acad., 93 N.J. 153, 170, 459 A.2d 1163 (1983), citing Friedman v. Tappan Dev. Corp., 22 N.J. 523, 535, 126 A.2d 646 (1956). That consideration must be legally sufficient. The test of legally sufficient consideration is whether what is bargained for and given in exchange for a promise constitutes a benefit to the promisor or a detriment to the promisee. Ibid. Detriment in the legal sense occurs when a promisee at the request of the promisor has done or promised to do any act he was not already legally bound to do. 1 Restatement, Contracts 2d, § 79 at 200 (1981). Similarly, it is a legal benefit to a promisor if, as a result of a request attached to his promise, he has acquired a right to or an actual performance from the promisee to which he was not otherwise legally entitled. Ibid.
In arguing that there was no consideration, it is plaintiffs burden to establish that Dubrow failed to receive any bargained for benefit from LBD or that LBD did not incur any detriment at Dubrow’s request. In light of the articulated legal principles and plaintiff’s burden, its argument that the transfer was without consideration is unpersuasive.
Although no actual cash or stock exchanged hands when the corporation took the car in its name and paid off Dubrow’s first loan, there was clearly sufficient consideration. 17 C.J.S., Contracts, § 81 at 769 (1963) (“The assumption of a liability at the request of the promisor is a valuable consideration,....”). The assumption of Dubrow’s indebtedness by LBD was the price sought in exchange for the transfer of the car to LBD’s name. See In re Carter, 4 B.R. 692 (D.Colo.1980) (“ ... the assumption of indebtedness can be consideration for a transfer of property.” Id. at 694); see also Christensen v. Abbott, 595 P.2d 900, 902 (Sup.Ct.Utah 1979); Sell v. Steller, 53 N.J.Eq. 397, 399, 32 A. 211 (Ch.1895), modified on other grounds 55 N.J.Eq. 530, 37 A. 1010 (E. & A.1897); Joslin v. N.J. Car- *348 Spring Co., 36 N.J.L. 141, 146 (Sup.Ct.1873). Moreover, the discharge of Dubrow’s indebtedness to the bank in the amount of $15,453.53 was valuable consideration in the form of a personal financial benefit to him. On the other hand, when the corporation assumed Dubrow’s obligation to pay off the first loan it incurred a detriment at the time it received title to the car. Thus, since Dubrow sought not only the transfer of the title to LBD’s name but also the payment by LBD of the outstanding balance on his loan, the benefit-detriment principles of legal consideration are clearly satisfied.[4]
Although plaintiff relies on Comm’r of Rev. v. SCA Disposal etc., 383 Mass. 734, 421 N.E.2d 766 (Sup.Jud.Ct.Mass.1981) to support its “economic effect” or economic unity argument above, this reliance is misplaced and inappropriate because the circumstances of SCA Disposal are readily distinguishable. In SCA Disposal, four wholly-owned subsidiaries were merged into a fifth wholly-owned subsidiary by the parent corporation. As part of a tax-free plan of reorganization, motor vehicles were transferred from the four subsidiaries to the surviving corporation. Initially, the tax commissioner argued that a merger agreement made under seal and wording of the agreement specifically indicating “in consideration of the benefits to be derived from such a plan” were sufficient technical substitutes for the element of consideration in the sales and use tax law.
Although the court recognized that a seal or the recitation of consideration on occasion may serve as a technical substitute for actual consideration, these substitutes do not produce “consideration” within the meaning of a sales and use tax. The court was quick to note that the alleged sellers, the transfer *349 ring subsidiaries, were dissolved at the moment that the merger occurred and received neither benefit from the surviving corporation nor tax benefits from the transaction, hence no actual consideration.
Additionally, the court pointed out that the tax commissioner had failed to argue that the transfer of the vehicles and the assumption of the debts and liabilities of the transferring subsidiaries by the surviving corporation was a net benefit to the transferring subsidiaries. The court continued, however, that even if this argument had been made, the four original corporations were dissolved at the time of the merger and thus could receive no benefit from the transfer. There were also no debts or liabilities actually extinguished by the merger. Furthermore, the court noted there were no ostensible benefits to the parent corporation, which was a third party to the transaction, from the transfer between subsidiary corporations. Thus, it concluded the mere fact that tax advantages may have indirectly accrued to the parent corporation from a tax-free reorganization plan was insufficient standing alone to characterize them as “consideration” within the intended meaning of the sales and use tax law.
Finally, the court in SCA Disposal recalled that the longstanding policy of the tax commissioner (a policy which the Director did not and does not have in New Jersey) was to exempt from sales and use tax liability all transfers pursuant to a merger between a subsidiary and its parent corporation. With this fact in mind, the court concluded that it could find no difference between that type of transfer which was a nontaxable event under the tax commissioner’s stated policy, and the transfer between the subsidiaries in SCA Disposal.[5]
*350 It is a fundamental tenet of our tax statutes that once the corporate form is adopted, the taxpayer must bear the legal and tax consequences of its actions. General Trading Co., supra, 83 N.J. at 137, 416 A.2d 37.
Through the use of an “economic effect” or economic unity theory elicited from SCA Disposal, supra, plaintiff has attempted to equate its own corporate financial dealings with those of Dubrow solely on the basis that he was the only shareholder and owner of LBD. It is essential, however, to clearly distinguish the status of Dubrow as a separate legal and taxable entity from that of LBD. If LBD and Dubrow were total strangers there would be little room to doubt that the assumption of Dubrow’s debt liability by LBD constituted a proper measure of the consideration for the sale. Since LBD and Dubrow in legal contemplation are separate and distinct entities the result under the sales act should be no different. See Household Fin. Corp. v. Taxation Div. Director, 36 N.J. 353, 363, 177 A.2d 738 (1962), app. dism., cert. den. 317 U.S. 13, 83 S.Ct. 41, 9 L.Ed.2d 47 (1962) (Our Supreme Court has consistently held business organizations to the consequences of the structure they have chosen, if for no other reason than “the administrative burden may well be too much if a state must explore the ramifications of corporate structures to determine the justice of recognizing or ignoring corporate entities in each factual complex.” Id. at 363, 177 A.2d 738).
Once the taxpayer has chosen the corporate business form under which it intends to operate, the law must subsequently recognize that form despite any adverse legal or tax consequences to the parties. In Somerset Apts., supra, for example, the taxpayer disputed the inclusion of land and buildings as part of its tax base in determining its corporation business tax. It claimed that although it held legal title to the real property, the actual owners were engaged in a partnership and the property should be attributable to the partnership not the corporation. The court reasoned that the taxpayer “chose to utilize the corporate structure to enable it to obtain the *351 necessary financing of the apartment complex. Having chosen this method of owning property and conducting business in this State, it cannot now deny its existence in order to avoid the tax consequences____” Id., 134 N.J.Super. at 555, 342 A.2d 520.
Similarly, in the present case, plaintiff stated clearly that one of its primary objectives in changing the title of the car from Dubrow’s name to that of LBD was to preserve this corporate asset as a deductible item on its federal corporate tax return. Yet, at the same time, plaintiff argued that Dubrow and the corporation should now be recognized as one entity for state sales tax liability. Plaintiff cannot choose to differentiate its corporate status from that of Dubrow when it suits its own economic purposes and then set aside that same separate and distinct corporate tax identity in another taxable transaction because it suits its purpose to do so in that instance. Consequently, having secured the advantages and benefits of the corporate structure for conducting its business, the necessity of predictability and certainty in the administration of taxing statutes demands that the separate legal and taxable identity of LBD be equally upheld in this case. See General Trading Co., supra, 83 N.J. at 138, 416 A.2d 37.
To support its third argument that the tax base used by the Director should not exceed the actual cash amount stated on the transfer of title, i.e., $1, plaintiff contends that N.J.S.A. 54:32B-19 is solely an anti-fraud measure and the regulations implementing this statutory provision are invalid to the extent that they allow the Director to use “external indices” to create “phantom consideration.” In the alternative, plaintiff argues that if this court decides that the actual cash amount stated on the actual transfer of title does not control, then it should not exceed $9,780.09 because this is the “actual consideration” paid by LBD after it received the two transfers ($5,672.44 and $5,415.24) into its corporate account.
Neither the legislative history nor the clear language of the statute supports plaintiff’s third contention that N.J.S.A. 54:32B-19 is purely an anti-fraud measure and since there is no *352 fraud in this case the statute is inapplicable. Plaintiff has also cited no precedent that precludes the Director from exercising his authority to set a tax base greater than the actual purchase price stated by the taxpayer or that would support the invalidation of the Director’s regulation. Moreover, as a general rule “administrative regulations are accorded a presumption of reasonableness with the burden on the attacking party to demonstrate that they are arbitrary, capricious, unduly onerous or unreasonable.” New Jersey Guild Of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978). The language in the Director’s regulation, N.J.A.C. 18:24-7.6, that permits him to establish the basis upon which the sales tax should be paid when the purchase price is not indicative of the true value of the property closely paraphrases the broad discretionary power given to the Director under the statute, N.J.S.A. 54:32B-19. Plaintiff’s unsubstantiated allegation that the Director’s regulation, N.J.A.C. 18:24-7.6 is ultra vires is inadequate to overcome its presumptive validity especially in light of the fact that it appears facially to be a plainly reasonable regulation. See Atlantic City Trans. Co. v. Taxation Div. Director, 12 N.J. 130, 146, 95 A.2d 895 (1953); see also Ridolfi v. Taxation Div. Director, 1 N.J.Tax 198, 203 (Tax Ct.1980).
Additionally, plaintiff’s assertion that LBD received in effect $11,087.68 ($5,672.44 and $5,415.24) as a payment for the assumption of Dubrow’s debt is erroneous. The deposit to LBD’s bank account from the proceeds of the first loan obtained by Dubrow individually could be characterized as a loan to the corporation from Dubrow. The deposit from the proceeds of the loan made to the corporation (second loan) was the balance remaining after the corporation paid off Dubrow’s original note. The Director is merely using as plaintiff’s sales tax base the underlying debt liability discharged by the corporation at the time of the transfer of the car, namely, $15,452.53, which is exclusive of the money retained by LBD for its own use. Accordingly, to measure plaintiff’s sales tax liability by the remaining amount of the debt solely attributable to the car and assumed by the corporation at the time of transfer of title is *353 not arbitrary, capricious, unduly onerous, or unreasonable. Ibid.
Plaintiffs final argument is that the Legislature intended to accord special treatment to corporate transfers by shareholders under N.J.S.A. 54:32B-2(e)(3)(B) and (E) because it could not “have intended to distinguish between otherwise indistinguishable transfers simply because they did not occur on the same day.” Quite to the contrary, the Legislature has specifically restricted the exception provisions by its use of narrow language in the act. The limited provisions of N.J.S.A. 54:32B-2(e)(3)(B) and (E) confine retail sales exceptions to capital contributions in return for the issuance of stock and pursuant to a merger, consolidation or newly formed corporation.
In essence, plaintiff is seeking a tax exemption. “One who claims exemption from a tax must bring himself clearly within the exemption provisions.” Container Ring v. Director, Div. of Taxation, 1 N.J.Tax 203, 208 (Tax Ct.1980), aff'd o.b. 4 N.J.Tax 527 (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981). The circumstances of plaintiffs case clearly fail to meet this test. Furthermore, unless specifically stated in the text, it is beyond the power of a court to construe or implement a law beyond the clear, unambiguous language of the statute. Alling Street Urban Renewal Co. v. Newark, 204 N.J.Super. 185, 189, 497 A.2d 1287 (App.Div.1985), certif. den., 103 N.J. 472, 511 A.2d 653 (1986); MacMillan v. Taxation Div. Director, 180 N.J.Super. 175, 177, 434 A.2d 620 (App.Div.1981), aff'd o.b. 89 N.J. 216, 445 A.2d 397 (1982); Toys R Us, Inc. v. Taxation Div. Director, 8 N.J.Tax 51, 62-63 (Tax Ct.1985).
Since plaintiff has met the two requisites of “transfer” and “consideration” which qualify the transfer of title to the automobile as a “retail sale,” and since plaintiff has not overcome the presumption of validity that attaches to a reasonable determination by the Director under clear regulatory and statutory guidelines, I conclude that the transfer of title from Dubrow to LBD meets the definition of a retail sale under the act. Further, in view of the Director’s present position that the *354 measure of the sales tax should be the amount of the outstanding balance of the promissory note paid in full by the corporation at the time of transfer of title by Dubrow to LBD, and as plaintiff has failed to establish that such is inappropriate, the Director’s position is herewith sustained. Thus, the amount of $15,452.53 shall be utilized as the measure of the sales tax.
In light of the fact that this conclusion does not accord with the assessment initially made by the Director, the parties are directed pursuant to R. 8:9-3 to submit agreed computations within ten days of the receipt of this opinion so that judgment may be entered. If the parties are unable to agree, the provisions of R. 8:9-4 shall control.

 The stipulation of facts recites a purchase price of $35,997 for. the Porsche and an allowance of $23,500 for a trade-in automobile. This would leave a balance due the car dealer of $12,497. The stipulation later recites the difference to be $12,499, a discrepancy of $2. Since the discrepancy is minimal the parties calculation of $12,499 will be utilized.

 The sales tax was based on the difference between the sales price of the Porsche of $35,997 less the trade-in allowance of $23,500. See N.J.A.C. 18:24-7.4(b). The calculation of the tax is $12,499 X .06 which equals $749.94. The parties, however, stipulated that the tax was $749.88.

 N.J.A.C. 18:24-7.6 provides:
Where, because of affiliation of interests between the seller and purchaser, or for any other reason, the purchase price stated for a motor vehicle is not indicative of the true value of the property, the Director may, at his discretion, utilize external indices to establish the basis upon which tax shall be paid.

 If the corporation had originally bought the car directly, it would have had to pay sales tax on the full value of the purchase, approximately $2,159.82 ($35,997 X .06) or $1,409.94 ($2,159.82 minus $749.88) more than Dubrow paid by trading in his own vehicle at the time of purchase. If Dubrow had transferred his trade-in car to the dealer and then the corporation had bought the new car as a corporate asset, each transaction would have been separately subject to sales tax liability as an independent sale. See N.J.A.C. 18:24-7.4.

 Moreover, it should be noted that if the same set of circumstances arose in this State specific provisions in the sales and use tax statute would automatically exempt the transfer of tangible personal property at the time of a merger. See N.J.S.A. 54:32B-2(e)(3)(B). Thus the Legislature in this State has clearly demonstrated an awareness of the distinction between the factual circumstances in this case from those involving a corporate merger.