Wilkins, Douglas H., J.
The plaintiff, Vincent Temp Agency, LLC (“Vincent”), has filed this administrative appeal pursuant to G.L.c. 30A, §14 from three decisions (“Decisions”) of the Fair Share Contribution Unit of the Division of Unemployment Assistance (“Division”). The Decisions found that Vincent was responsible for a fair share contribution for quarters two, three and four of fiscal 2009. Pursuant to Superior Court Standing Order 1-96 as amended, Vincent has filed a Motion for Judgment on the Pleadings (“Motion") , which the Division has opposed. After argument and review of the administrative record and written submissions of the parties, the Motion is DENIED.
BACKGROUND
The Division’s findings, as supported by substantial evidence, included the following.
Vincent is a temporary employment business located in Massachusetts. It filed an on-line questionnaire with the Division for the purpose of determining its liability for the Fair Share Contribution program during the period January 1, 2009 to March 31, 2009 (2009 Q2) and the two subsequent quarters. The program’s payroll hours range for Q2 was 25,000. The total number of payroll hours for the quarter was 24,018, after adjustment by the hearing officer for double counting by the auditor of the hours worked by Vincent’s two owners.
During the base period, none of Vincent’s 36 or more full-time employees was enrolled in an employer-sponsored group health insurance plan, because Vincent had no such employer-sponsored plan in place during Q2. The lack of such a plan was in no sense Vincent’s fault; nor was it for lack of trying.
Vincent’s general manager solicited and received quotes for plans of coverage for employees from her insurance agent. Vincent offered this coverage to its employees through an offer to pay 50% of the cost of an individual premium, to be deducted from payroll on a monthly basis. It identified and discussed the plan with its full-time employees and encouraged employees to participate in the plan. It also conveyed the offer of insurance by distributing Health Insurance Responsibility Disclosure waiver forms on or about March 1, 2009.
Three of Vincent’s eligible employees expressed interest in the plan. The others declined the offer. Vincent learned from its insurance agent that participation in a small-group coverage health insurance plan required a minimum percentage participation of 75% of all eligible employees. The employer did not meet that participation level and therefore could not obtain group coverage.
Vincent’s insurance agent recommended individual plan coverage for the employees who requested coverage. Vincent secured coverage for those employees through this agent and contributed varying amounts to the cost of those plans, up to 50% of the premium cost.
The Division conducted an audit of Q2 2009, Q3 2009 and Q4 2009, which concluded that Vincent had more than 50 full-time equivalent employees in all three quarters of fiscal 2009. That turned out to be wrong for Q2 2009 and was corrected in the Decision. For Q3 2009 and Q4 2009, Vincent did have more than 50 full-time equivalent employees. The audits for all *365 three quarters all concluded that Vincent did not make a “fair and reasonable contribution” to its employees’ group insurance plan and therefore was liable for a fair share contribution. The hearing officer agreed that Vincent owed a fair share contribution, even though she disagreed with the auditor’s calculation of Vincent’s payroll. She assessed a fair share contribution of $3,689.00 for Q2 2009, $3,907.00 for Q3 2009, and $3,786.00 for Q4. Vincent filed a timely appeal to this Court.
DISCUSSION
Vincent argues that it should not be liable for a fair share contribution because of the offer it made to its employees, coupled with its follow-through by paying 50% of the premium for the employees who accepted that offer. It asserts that imposition of a fair share contribution would penalize it for the decisions that most of its employees made not to accept health insurance through this employer. The hearing officer viewed Vincent’s argument as beyond her authority to address, because it “goes to the fairness of the law in its application to the employer.” Vincent argues that the Court has the authority to address the issue, because it raises the question whether the Division’s regulations exceed its statutory authority.
The Massachusetts universal health care legislation enacted in April 2006 (St. 2006, c. 58, §47) requires that Massachusetts employers who employ eleven or more full-time equivalent employees must offer a group health plan to employees and must make a fair and reasonable contribution to the cost of the employees who enroll. Those employers must also file a Fair Share Contribution report, which provides the basis for determining whether the employer owes a fair share contribution. The obligation to make such a contribution appears in G.L.c. 149, §188(b), which provides in relevant part:
For the purpose of more equitably distributing the costs of health care provided to uninsured residents of the commonwealth, each employer that (i) employs 11 or more full-time equivalent employees in the commonwealth and (ii) is not a contributing employer shall pay a per employee contribution at a time and in a manner prescribed by the director of workforce development, in consultation with the director of unemployment assistance, in this section called the fair share employer contribution . ..
For purposes of subsection (ii), the key definition is: “ ‘Contributing employer,’ An employer that offers a group health plan, as defined in 26 U.S.C. 5000(b)(1), to which the employer makes a fair and reasonable premium contribution, as defined in regulation by the division of health care finance and policy.” G.L.c. 149, §188(a). Notable in this definition is the phrase “group health plan.” Vincent offered a group health plan, but was unable actually to provide one due to lack of interest and therefore did not “make[] a . . . premium contribution” to a group health plan.
Pursuant to its authority under G.L.c. 149, §188(a), the Division has implemented the statute through regulations. Under 114.5 CMR 16.03(3)(d)(2) (effective January 1, 2009 through September 31, 2009), two standards determined whether an employer has made a “fair and reasonable contribution” within the meaning of G.L.c. 149, §188(a):
a. for an Employer with more than 50 Full-time equivalent employees:
i. its percentage of Full-time Employees enrolled is at least 25% and it meets the premium contribution standard, or
ii. its percentage of Full-time Employees enrolled is at least 75%.
b. for an Employer with 50 of fewer Full-time equivalent employees, if:
i. its percentage of Full-time Employees enrolled is at least 25%, or
ii. it meets the Premium Contribution standard.
In 114.5 CMR 16.03(3)(c), the Division defined the term, “premium contribution standard.”
Premium Contribution Standard. To meet the premium contribution standard, an Employer must make a premium contribution of at least 33% of the cost of an employer sponsored Group Health Plan offered to all of its Full-time Employees no more than ninety days after the date of hire. Said Group Health Plan must be in effect and available to those Full-time employees for the entire quarter . . .
For periods after those involved in this case, the Division amended its regulations to provide that employers with over 50 FTEs meet the fair contribution test if they maintain a minimum enrollment of 25% and premium contributions of at least 33%. 114.5 CMR § 16.03(d) (2) as amended effective October 1, 2009.
The Division reads the phrase “to which” in the statute to link the offer of a group health plan to a premium contribution to that same plan. In other words, both the offer and the premium contribution must involve a group health plan. That construction is at least reasonable and may even be compelled by the statute’s plain language. The Division’s regulation follows that construction. Vincent responds that it offered to make a 50% contribution to a group health plan. But the statute, as reasonably construed by the Division, requires not only an offer but an actual contribution to a group health plan. The Division’s determination that Vincent did not contribute to a group health plan easily passes the substantial evidence test; there is no evidence or argument that, despite its efforts, Vincent ever secured a group health plan at all.
This ruling does not require the employer to force the employees to accept its offer of group health insurance. It simply provides that liability for a fair share contribution flows from a failure or inability to *366 enlist sufficient numbers of employees in the plan. If the point of the statute were to punish employers who made insufficient offers or efforts to enlist employees, then Vincent might have a point, because punishment for matters beyond the employer’s control could be arbitrary, capricious and in violation of the statute. However, the statute’s purpose is consistent with its terminology — it requires an employer to contribute its fair share. See G.L.c. 149, §188 (“For the purpose of more equitably distributing the costs of health care provided to uninsured residents of the commonwealth . ..”). An employer who, for whatever reason, does not pay for an employee’s health insurance, has made less of a contribution than one who does. The employee will need to obtain insurance from another source. The non-contributing employer may have a cost advantage compared to its competitors. The Legislature has determined to address these perceived inequities by requiring employers like Vincent to contribute its “fair share” into a trust fund to subsidize the costs of health insurance for uninsured residents through the Commonwealth Care Program. G.L.c. 149, §188(d); G.L.c. 29, §2000; G.L.c. 118H, §2.
Vincent’s final argument — that the Division’s regulation violates the authorizing statute — must meet a very high burden. A court “must apply all rational presumptions in favor of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.” Borden, Inc. v. Commissioner of Public Health, 388 Mass. 707, 723, appeal dismissed, 464 U.S. 923, cert. denied, 464 U.S. 936 (1983). See also Mass. Federation of Teachers, AFT, AFL-CIO v. Board of Education, 436 Mass. 763, 771-72 (2002); City of Quincy v. Mass. Water Resources Auth., 421 Mass. 463 (1995). The Division’s regulation passes this test because of the logical connection it bears to the statutory language and purpose discussed above. This is particularly true where the agency’s regulation and interpretation are nearly contemporaneous with passage of the statute, Commissioner of Revenue v. SCA Disposal Services, 383 Mass. 734, 738 (1981), and were made pursuant to the explicit grant of interstitial rulemaking contained in G.L.c. 149, § 188(a). See Wilcox v. Ives, 864 F.2d 915, 925 (1st Cir. 1988); St. Luke’s Hospital v. Secretary of HHS, 810 F.2d 325 (1st Cir. 1987); Mayburg v. Secretary of HHS, 740 F.2d 100 (1st Cir. 1984). The above discussion also shows that the Division’s position does not “produced a result antithetical to the purpose of the enabling statute.” Coalition for the Homeless v. Secretary of Human Services, 422 Mass. 214, 227 (1996).
CONCLUSION
For the above reasons, the plaintiffs motion for judgment on the pleadings is denied. Final judgment shall enter affirming the Division’s three decisions under the agency’s docket numbers 561459, 561460, 561461.