EDWARD FRIEDMAN AND GUS ZACKARAKIS, PLAIN-TIFFS-APPELLANTS, v. TAPPAN DEVELOPMENT CORPORATION, A NEW YORK CORPORATION, DEFENDANT-RESPONDENT.

Argued October 22, 1956—Decided November 13, 1956.

524

*Mr. James A. Major* argued the cause for the plaintiffs-appellants.

*Mr. Herman L. Fast* argued the cause for the defendant-respondent (*Mr. Joseph H. Robins,* of the New York Bar, on the brief; *Messrs. Fast & Fast,* attorneys).

The opinion of the court was delivered by

HEHER, J.   We certified for appeal the judgment of the Appellate Division of the Superior Court, 39 *N. J. Super.* 103 (1956), reversing a judgment of the Chancery Division awarding to plaintiffs specific performance of what was (and is) asserted to be a contract for the sale by the defendant corporation to plaintiffs of real property situate in the Borough of Old Tappan, New Jersey, bearing date February 15, 1954.

The Appellate Division concluded that the writing was "but a gratuitous option or continuing offer" to sell the lands in question at a given price per acre, revoked prior to acceptance, and entered judgment accordingly.

Reciting that Tappan had "offered to sell" to the plaintiff Friedman "certain lands" in Old Tappan to which it had title, "upon certain terms and conditions," the agreement declared that Friedman agreed to pay Tappan "at the rate of $400 per acre for each acre actually conveyed" to Friedman, and Tappan agreed "to convey said acreage" to Friedman "for the aforesaid sum of $400 per acre on demand by" Friedman; Tappan agreed "not to sell or convey any part of its real estate holdings in Old Tappan to anyone other than" Friedman "for a period of one year from the date hereof without" Friedman's "express written consent to said conveyance"; and the "purchaser," it was provided, "shall pay the cost of preparing a description of the property to be conveyed."

It was then stipulated that Tappan "make(s) no representations whatsoever as to the character of the real estate involved, zoning ordinances, state of title, marketability of title, liens, encumbrances, sewers, encroachments or restrictions of any kind whatsoever," and "agrees only to convey whatsoever title it has," and "In the event the title tendered" by Tappan "is rejected" by Friedman "for any reason whatsoever, then the only obligation of" Tappan "shall be to return the money paid, and there shall be no further claims by either party against the other, be it for cost of examination of title, survey, or other expenses of whatsoever type or nature"; and that the "sum of $400 is to be paid upon the execution of this agreement to Murray Zazeela, Esq., the attorney for" Tappan, "to be held by him until title to the first acre of land to be conveyed hereunder is delivered to" Friedman. And then comes the concluding provision: "However, in the event no conveyance is executed pursuant to this agreement for any land whatsoever for a period of sixty days from the date hereof, that is to say the 15th day of April, 1954, then this agreement shall be and become null and void and neither party shall have any rights or obligations hereunder other than the obligation to return said sum of $400 to" Friedman.

As found by Judge Conford, for the Appellate Division, delivery of the executed drafts of the agreement "was not completed until March 5, 1954 or thereabout"; the plaintiff Friedman, "a lawyer, was concededly acting for his client, the plaintiff Zackarakis"; on March 16, 1954 "Zazeela, attorney for defendant, phoned Friedman and advised him the defendant 'would not go through with the deal,'" and "This was confirmed by letter of March 22, 1954 from Zazeela to Friedman"; "Thereafter Friedman advised Zazeela that his client insisted upon going ahead with the transaction and would take all the property"; "Defendant refused to accede and offered to return the $400 deposit mentioned in the agreement, but plaintiff declined the tender."

Plaintiffs contend that the writing "was a completed contract," but "if it were an option," it remains to inquire whether "there was the so-called promissory estoppel referred to by this court in" *American Handkerchief Corporation v. Frannat Realty Co.,* 17 *N. J.* 12 (1954), in that "title to the premises was searched at a cost of $505, and in addition, a survey was made at a cost of $200," which, in fact, was included in the charge of $505. However, as the Appellate Division also found, "after negotiating, but prior to receiving defendant's signed copy of the agreement," Friedman on February 23, 1954 "wrote to a title company concerning the instant transaction, advising it that the arrangement required him 'to ascertain what I am buying,' that the acreage might be anywhere from 'five to six acres' to 'twenty to thirty acres,' and requesting that the title company 'unearth' for him the facts as to 'what I am buying,'" and "Friedman did not countermand the order at any time"; the title company "delivered to Friedman a survey of the subject property April 13, 1954," and "It also began a title examination of the property 'two or three weeks' prior to March 22, 1954 without express request therefor, acting on an assumption from the February 23 letter that such an examination was desired by the applicant"; and "Its location of the property had been completed by March 22 and it made no charge therefor," but "it did eventually bill Friedman $505 for

a survey and examination of the title and that sum was paid." And the holding was that in this regard there was not "factual reliance 'of substantial character' upon the offer"; the "offer was revoked March 16, 1954," and the evidence indicates that "had plaintiffs called off the title company on that date their expense, if any at all, would have been minimal," and "In short, this is not a case where 'injustice can be avoided only by enforcement of the promise,' " citing *Restatement, Contracts, section* 90.

The argument for defendant is that (a) the writing constituted an option merely, "not a binding contract," "nothing more than an offer" "not supported by consideration," "withdrawn before acceptance," citing *American Handkerchief Corporation v. Frannat Realty Co., supra;* (b) there was no "mutuality of obligation and the promise of Friedman was illusory," citing *G. Loewus & Co. Inc., v. Vischia,* 2 *N. J.* 54 (1949); (c) specific performance should not be decreed "where a description of the property is uncertain and undefined," and the "offer lacks definiteness and certainty and is vague," as to matters which need not be here particularized; (d) the "offer became null and void because no conveyance was executed within 60 days from the date of same"; and (e) the doctrine of promissory estoppel has no application where, as here, the "defendant did not induce the plaintiffs in any legal sense to incur expense in making the examination of the title," a course taken by plaintiffs to enable them "to determine whether it would accept the offer and purchase at the stipulated price," which "did not inure to defendant's benefit in any way," and "it clearly appears" that "had Friedman contacted the title company on March 16, (nine days after he received the "signed offer") when he received notice of withdrawal of the offer, there would not have been any expenses as far as the title company was concerned," and Friedman's "negligence" in this regard cannot be "turned into an act of reliance based upon a withdrawn offer."

■■■ We seek for the intention of the parties to the writing; and to that end the symbols of expression are to

have a reasonable interpretation, taken and compared together in the context of the circumstances. It is not the real intent but the intent expressed or apparent in the writing that controls. *Newark Publishers' Association v. Newark Typographical Union No. 103, 22 N. J.* 419 (1956).

■ A contract is an agreement resulting in obligation enforceable at law; and it is basic to an agreement entailing obligatory jural consequences that the parties have a distinct intention common to both. "Doubt or difference is incompatible with agreement." *Anson on Contracts (Turck's ed.* 1929), *sections* 2, 3. In a word, a contract is a voluntary obligation proceeding from a common intention arising from an offer and acceptance. *Johnson & Johnson v. Charmley Drug Co.,* 11 *N. J.* 526 (1953). To be enforceable, a contract must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty. *Savarese v. Pyrene Mfg. Co.,* 9 *N. J.* 595 (1952). See *Culver v. Culver,* 39 *N. J. L.* 574 *(Sup. Ct.* 1877); *Buckley v. Wood,* 67 *N. J. L.* 583 *(E. & A.* 1902); *Wadge v. Crestwood Acres, Inc.,* 128 *N. J. L.* 551 *(Sup. Ct.* 1942), affirmed 129 *N. J. L.* 400 *(E. & A.* 1943).

■ The writing here did not place upon plaintiffs the obligation to purchase Tappan's lands, in whole or in part; it simply granted an option to purchase the lands at the stated rate per acre, a gratuitous option that in its very nature was revocable until its exercise, an offer subject to withdrawal before acceptance.

The agreement fixed the price of the land to be conveyed at $400 per acre, and provided for the payment of $400 to Tappan's attorney, "to be held by him" until the conveyance of the "first acre of land to be conveyed" thereunder, but in the event that "no conveyance is executed pursuant" to the agreement "for any land whatsoever for a period of 60 days," then the agreement shall become null and void and "neither party shall have any rights or obligations" thereunder "other than the obligation to return" to Friedman the sum so paid on the execution of the agreement.

This was an option pure and simple, a mere offer to sell, unsupported by a consideration, by the basic law of contracts revocable until an obligation comes into being by acceptance according to its terms. In case there be no conveyance "for any land whatsoever for a period of 60 days," *i. e.*, a failure to exercise the option, then the agreement shall become null and void and all rights and obligations of the parties *inter se* shall cease and determine, save only the obligation to return the initial payment. And this without regard to fault of either party. Indeed, the agreement thereby plainly recognizes that plaintiffs' failure to take title to the lands, in whole or in some part, would not put them in default. We cannot create a contract when the parties have not spoken in terms of legal obligation. This agreement was drafted by lawyers (Friedman and Zazeela) who were aware of the fundamental differences between a contract and an option, in terms of obligation.

A continuing offer grounded in a sufficient consideration constitutes an "option," as the term is known to the law. Since it is a promise upon a legal consideration, it is irrevocable for the time of its continuance, and thus it takes the classification of a contract; and the want of mutuality has no significance. Though irrevocable, the option is but an offer; and notice of its unqualified acceptance, *e. g.*, where the subject matter concerns the sale of goods or personal property, ordinarily serves to create a bilateral executory contract of sale as in the case of the conventional offer of sale and its unconditional acceptance. *American Handkerchief Corporation v. Frannat Realty Co., supra; Martindell v. Fiduciary Counsel, Inc.*, 133 *N. J. Eq.* 408 (*E. & A.* 1942).

Indeed, "mutuality of obligation" is a term not always clearly understood. It suggests that unless both parties are bound, neither is bound. And in this, it is ofttimes confused with "consideration." "Mutuality" signifies more than reciprocal undertakings by the parties; there may be an undertaking and an executed consideration. A "unilateral contract" may consist of a single binding promise

if supported by an executed consideration, or is under seal at common law.

■■■■ A unilateral contract "is one in which there is a promise on one side only, the consideration on the other side being executed"; "* * * such contracts are not void, but are equally as valid as bilateral contracts, consisting solely of mutual promises to do some future act, in which the consideration of the promise of one party is a promise on the part of the other"; the term "'unilateral' is often used to express absence of mutuality"; in the case of "contracts made up solely of mutual promises, each the consideration for the other, where the promises of one party are so expressed as not to be absolutely binding on him, but to be performed only if such party so wills, or a promise on but one side and no consideration therefor, the one who makes the absolute promise in the one case, or the sole promise in the other, is not bound to perform"; the "reason sometimes given is that the contract is unilateral, or void for want of mutuality," but the "real reason is that there is not a sufficient consideration for the promise"; "'Consideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise.'" *Rich v. Doneghey,* 71 *Okl.* 204, 177 *P.* 86, 3 *A. L. R.* 352 (*Sup. Ct.* 1918). The doctrine of mutuality of obligation "appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other"; where there is "no other consideration for a contract, mutual promises must be binding on both parties," but "where there is any other consideration for the contract, mutuality of obligation is not essential." *Meurer Steel Barrel Co. v. Martin,* 1 *F.* 2d 687 (3 *Cir.* 1924). See also *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 *Ill.* 102, 133 *N. E.* 711 (*Sup. Ct.* 1921).

"Mutuality of obligation," says Professor Corbin, "should be used solely to express the idea that each party is under a legal duty to the other; each has made a promise and each is an obligor"; this is the meaning with which the

term is commonly used, but "it is sometimes declared that it means nothing more than that there must be a sufficient consideration," and even though "one of the parties has made no promise and is bound by no duty, the contract has sufficient mutuality if he has given an executed consideration," a sound result although the rationalization is questionable, and now it is generally agreed that "it is consideration that is necessary, not mutuality of obligation." *Corbin on Contracts, section 152.*

But, as said in a footnote to this section, "As in any other case, this executed consideration must be one that is itself sufficient to make the return promise binding." And reference is made to *Schneller v. Hayes,* 176 *Wash.* 115, 28 *P. 2d* 273 *(Sup. Ct.* 1934), holding that the consideration was not sufficient, because it was no more than performance of a preexisting duty to the promisor.

And where an offered promise receives no return promise, but can be accepted piecemeal by rendering a requested part performance, thus constituting a unilateral contract on the offered terms, such part performance, unless so rendered as to justify the implication of a promise to render the full performance proposed in the offer, leaves the offer revocable at the will of the offeror as to all but the rendered part performance. *Corbin, Ibid., section* 152.

Here, no consideration was given for the option, and so the writing does not constitute an option contract irrevocable for the term prescribed. Indeed, there is no suggestion of a supporting consideration. Plaintiffs' contention is that "there was an implied obligation on Friedman to buy any property needed from the defendant," and if the writing be deemed an option, it became "effective by a change of position on the part of the plaintiffs," in the nature of a promissory estoppel, a gratuitous offer made irrevocable by "subsequent action in reliance upon it," citing *American Handkerchief Corporation v. Frannat Realty Co., supra.* As stated *supra,* the option agreement provided for an initial payment of $400 to Zazeela, the attorney for Tappan, to be held by him until title to the "first acre of land" had been

conveyed to Friedman, ostensibly to cover the purchase price of the first acre should the option be exercised, and, as we have seen from the last paragraph of the agreement, to be returned should no conveyance be made "for any land whatsoever for a period of 60 days," in which event the agreement was automatically rendered null and void. These provisions bespeak the character of the payment in terms excluding any suggestion of consideration given for the option. The question is largely one of intention. *American Handkerchief Corporation v. Frannat Realty Co., supra,* 17 *N. J.,* at *page* 18. Consideration is the price bargained for and paid for a promise. If it is bargained for as the exchange for the promise, the promise is not gratuitous. *Coast National Bank v. Bloom,* 113 *N. J. L.* 597, 602 (*E. & A.* 1934).

It is to be observed that we are asked not to consider the point because in the trial court plaintiffs read the agreement as an option and not as a binding contract, exercisable by the purchase of at least one acre by April 15, 1954, and the remaining lands within a year, in whole or in part, and proceeded accordingly.

And, for the reasons assigned by the Appellate Division, the doctrine of "promissory estoppel" is inapposite. The things done by the offeree did not constitute an election to exercise the option; nor were they induced by the offeror on the supposition of a contract of sale. Plainly, the offeree was seeking information concerning the *quantum* of the land made the subject of the offer and the state of the title, presumably circumstances considered by the offeree relevant to the policy and wisdom of exercising the option. Indeed, the survey of the land was made without cost prior to the delivery of the executed option, and the expense of searching the title could have been avoided in the main were action promptly taken when notice came that the offer to sell had been withdrawn.

The term "promissory estoppel" is of comparatively recent origin in our jurisprudence, not altogether clear in its

quality and import. It is not a true estoppel, but a departure from the classic doctrine of consideration that the promise and the consideration must purport to be the motive each for the other, in whole or at least in part, and it is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting, *Wisconsin & Michigan R. Co. v. Powers,* 191 *U. S.* 379, 386, 24 *S. Ct.* 107, 48 *L. Ed.* 229 (1903), Holmes, C. J.; *Coast National Bank v. Bloom, supra,* a professed adaptation of the principle of estoppel to the formation of contracts where, relying on a gratuitous promise, the promisee has suffered detriment. *Martin v. Meles,* 179 *Mass.* 114, 60 *N. E.* 397 (*Sup. Jud. Ct.* 1901), Holmes, C. J. There is in such circumstances no representation of an existing fact, but merely that the promisor at the time of making the promise intends to fulfill it. The reliance is on a promise, and not on a misstatement of fact, and so the estoppel is termed "promissory" to mark the distinction. *Williston on Contracts* (*rev. ed.*), *section* 139.

In this country, the doctrine has been generally confined to charitable subscriptions, where difficulty has been encountered in sustaining the promise under the conventional theories of consideration, and to certain promises between individuals, for the payment of money, enforced as informal contracts created without a manifested mutual assent or consideration. *Allegheny College v. National Chautauqua County Bank,* 246 *N. Y.* 369, 159 *N. E.* 173, 57 *A. L. R.* 980 (*Ct. App.* 1927), Cardozo, J.; *Williston, Ibid., section* 139; *Restatement, Contracts, Chapter* 3, *Topic* 4. Promissory estoppel, said Judge Learned Hand, "is now recognized as a species of consideration." *Porter v. Commissioner of Internal Revenue,* 60 *F.* 2d 673 (2 *Cir.* 1932).

But opposed in principle are cases holding that performance of a detrimental condition attached to a gratuitous promise is not a substitute for consideration, and the promisor is not liable if he breaks his promise; and that a detriment incurred in reliance on a promise is not sufficient

consideration unless the detriment was requested as consideration. *Wisconsin & Michigan R. Co. v. Powers, supra; Williston, section* 139.

It is generally held that the principle of estoppel is applicable to *in futuro* promises, if subject to estoppel at all, only where they relate to an intended abandonment of an existing right, and are made to influence others who in fact are induced thereby to act or to forbear: *e. g.,* where one who has induced his creditor to forbear to bring action upon his claim by a promise of payment or a promise not to plead the statute of limitations as a defense, even though such forbearance was not requested as consideration for the promise, and though the new promise (because not in writing or for some other reason) was not binding as such. In those cases, "no new right is created. The court does not sustain an action on the promise; it reaches the desired result by allowing a defense to an action or allowing an original right to be enforced by merely prohibiting the interposition of a defense." *Williston, section* 139.

And it has been held that a license to divert a watercourse could not be revoked after the licensee had made improvements and invested capital in consequence of it. *Rerick v. Kern,* 14 *Serg. & R. (Pa.)* 267 (*Sup. Ct.* 1826). But "no slight acts or merely technical reliance will serve. The weight of authority, moreover, is opposed to these decisions and holds a gratuitous license revocable though action has been taken in reliance upon it." *Williston, section* 139. See our own case of *Lawrence v. Springer,* 49 *N. J. Eq.* 289 (*E. & A.* 1892), holding that the expenditure must be made "in reliance upon such license," and the loss "irreparable" unless there be equitable intervention.

The basis of equitable interposition for specific performance in behalf of one who has been given a gratuitous promise of land is entry and the making of improvements on the land in reliance on the promise. Equity regards only possession of the land and improvements. No other detriment would suffice. *Williston, section* 139; *Restatement, Contracts, section* 197.

The rationale of all these holdings is action in justifiable reliance on a promise and the hardship involved in refusing enforcement of the promise. A promise which the promisor should reasonably expect to induce action or forbearance of a "definite and substantial character" on the part of the promisee, and which does induce such action or forbearance, is binding "if injustice can be avoided only by enforcement of the promise." *Restatement, Contracts, section* 90.

The principle thus invoked is not germane. Plaintiffs would render a gratuitous option irrevocable by the mere voluntary doing of that which had no relation to consideration or false inducement, and thus set at naught the common intent and purpose. The offeror had no reason to believe the offeree would cause a search of the title to be made before acceptance of the offer; and the offeree knew the risk in this regard before acceptance of the offer. Such was the nature of the option. The case is patently not within the cited principle.

Professor Corbin admonishes, *section* 204, that although the use of the phrase "promissory estoppel" made some headway *ad initium* "because it satisfied the need of the courts for a justification of their enforcement of certain promises in the absence of any bargain or agreed exchange," it is nevertheless "objectionable"; the "word estoppel is so widely and loosely used as almost to defy definition; yet, in the main, it has been applied to cases of misrepresentation of facts and not to promises," and the American Law Institute "was well advised in not adopting this phrase and in stating its rule in terms of action or forbearance in reliance on the promise."

Affirmed.

*For affirmance*—Justices HEHER, WACHENFELD and BURLING—3.

*For reversal*—Chief Justice VANDERBILT, and Justice JACOBS—2.