**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4745-14T4

ERIC M. RAUCH and SHAN CHIN,
individually and in their
capacity as officers of and
derivatively as shareholders
and members respectively of
PHYLCO, LTD, d/b/a DOCTORS
SUBACUTE CARE and SOUTHVIEW,
LLC,

    Plaintiffs-Appellants,

v.

STUART RAUCH and PHYLLIS RAUCH,

    Defendants-Respondents,

and

PHYLCO, LTD, d/b/a DOCTORS
SUBACUTE CARE and SOUTHVIEW,
LLC,

    Nominal Defendants.

_____

        Argued March 16, 2017 — Decided  August 30, 2017

        Before Judges Espinosa, Suter and Guadagno.

        On appeal from the Superior Court of New
        Jersey, Law Division, Passaic County, Docket
        No. L-4177-10.

Stephen Schweizer (Quinn Emanuel Urquhart & Sullivan, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellants (Greenbaum, Rowe, Smith & Davis, LLP, and Mr. Schweizer, attorneys; Justin P. Kolbenschlag and Mr. Schweizer, on the brief).

Kevin H. Marino argued the cause for respondents (Marino, Tortorella & Boyle, PC, attorneys; Mr. Marino, John A. Boyle, and Erez J. Davy, on the brief).

PER CURIAM

Plaintiffs Eric Rauch and Shan Chin appeal four orders arising from their litigation against defendants Stuart and Phyllis Rauch.[1] The litigation, asserting legal and equitable causes of action, requested declaratory judgment, specific performance damages and injunctive relief stemming from a dispute over plaintiffs' claimed ownership interest in defendants' business. The June 10, 2014 order denied defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment. The January 20, 2015 order granted defendants' renewed motion for summary judgment, and dismissed with prejudice eight counts of plaintiffs' ten-count complaint. That order also denied plaintiffs' cross-motion to dismiss three of defendants' affirmative defenses. The May 4, 2015 order granted defendants' motion in limine to exclude from the trial all testimony and evidence that was not related to

---

[1] We use the parties' first names to avoid confusion.

the reasonable value of plaintiffs' services. The May 19, 2015 order granted a directed verdict in favor of defendants on the remaining counts of the complaint, dismissing it with prejudice. We affirm all four orders.

I.

Plaintiff Eric Rauch is the son of Stuart and Phyllis Rauch, and is married to plaintiff Shan Chin. In 2005, Stuart and Phyllis purchased a nursing home (the facility) through Southview, LLC, a company they formed in 2001, and operated the facility through Phylco Limited LTD, d/b/a Doctors Subacute Care (DSC), another company that they owned (collectively, the Rauch companies). The facility suffered financial losses almost from the beginning of its operation. At Eric's urging, Shan began working at the facility in February 2006 with responsibility for bookkeeping and billing insurance providers. By 2008, the facility's net losses exceeded $585,000.

In February 2009, Eric lost his job in the merger and acquisition section of a large law firm and immediately approached Stuart about working for the Rauch companies. Eric was concerned about his parents because "they had personal guarantees on [the Rauch companies] and if [they] had gone under it would have meant the end of them . . . they would go bankrupt personally." Eric

began to work at the nursing facility in February 2009 without a salary.

Eric's plan was to increase the number of Medicare and managed care patients to improve the facility's reimbursement rates. None of the parties dispute that the financial condition of the facility improved markedly in 2009, earning $554,000, which meant the business improved its performance by over one million dollars during that year. Net revenues increased further in 2010.

In August 2009, Eric asked his father for a fifty percent equity interest in the business, to be shared with Shan, and told his father if he did not agree within a week, that he and Shan would leave after a brief period of transition. However, if Eric and Shan were given this fifty percent equity interest, they would continue working. No other employment conditions were discussed, nor was the length of time they would stay.

Stuart agreed and they shook hands. Both Eric and Shan continued working at the Rauch companies for the next ten months. There was no written agreement. Eric described the terms that were discussed:

> [W]e would continue to discuss significant operating decisions collaboratively as we had, that was in response to [Stuart's] concern that he would have no more authority over the business. Another term that was agreed to was that we, Shan and I, would each have [twenty-five] percent in Phylco and Southview as of

A-4745-14T4

that moment. Another point that was discussed was that he wanted to buy an apartment and wanted to know if this fifty-percent deal would prevent him from doing that. I told him that I [didn't] think that it would . . . . Other terms that were discussed on that day were that he, after the agreement, offered me again, a salary, and I told him that I didn't need much money, but I would appreciate if the business started paying my rent, and he said that I should have to do that.

There was no discussion about the other fifty percent of the Rauch companies until January 2010 at a family brunch. Stuart and Phyllis wanted Daniel, their other son, to have twenty-five percent of the business, and Eric objected.

In June 2010, Eric wanted Stuart and Phyllis to sign a "Director Agreement" (the Agreement). The document identified Stuart and Phyllis as owners and Eric as director. Under its terms, the owners would "ensure that the [d]irector's judgment is adhered to with regard to major decisions regarding the [b]usiness including but not limited to transfer of ownership, assets, and hiring of key personnel." The "[o]wners" also would "compensate the [d]irector for service previously rendered." Plaintiffs described the Agreement as setting forth "the manner in which defendants were to grant Eric Rauch exclusive authority to make certain decisions" about transfer of ownership interests, assets and hiring. The Agreement was never signed.

5

Eric and Shan contend that they were fired by Stuart shortly thereafter. Defendants contend that Eric and Shan simply did not return to work once Stuart would not sign the Agreement.

On July 9, 2010, Stuart met with Eric and Shan at their apartment but unknown to Stuart, Eric tape-recorded their conversation. In the beginning of the recording, Stuart appeared to make a financial proposal to Eric and Shan. Eric apologized to his father. "I feel like I used the fact that you needed me and Shan there to get you to agree to give us [fifty percent] of the business. And I know that it was . . . a betrayal." His father acknowledged an agreement, stating "what I agreed to . . . was . . . a gentleman's agreement in principle." During the conversation Stuart explained to Eric "[the business] will definitely be [fifty percent] yours if you wait until the will is executed, because that's my intention. And it's still my intention." Toward the end of the recording, Stuart stated:

> I would not have given you an agreement to
> give you [fifty percent] if you hadn't coerced
> me that day. The entire structure was
> predicated on a coercion. And if you build a
> structure on a bad foundation the whole thing
> is going to topple. And it did topple. And
> I believe that there was a flaw in the original
> agreement that we had reached. If we had
> reached an agreement that was a virtuous one,
> by virtuous means, which I can't imagine how
> that would take place, but I note that the
> agreement that we reached was the farthest
> thing in my mind from mutually agreed upon. I

A-4745-14T4

was backed into a corner and I agreed on something which I tried to stomach. But in my mind, not only was it a bad and unfair agreement to begin with, but it got worse and worse and worse every week, every month that our working together took place.

Stuart continued that he did not consider he was "breaking an agreement that was a fair agreement or mutually agreed upon" because he thought Shan and Eric were going to "leave that day if I didn't agree in some way, shape, or form to the [fifty-fifty] division."

In August 2010, Eric and Shan sued Stuart, Phyllis, and their companies in a ten-count complaint.[2] Defendants answered and filed counterclaims. Following discovery and mediation, both sides filed summary judgment motions.

On June 10, 2014, Judge Donald J. Volkert, Jr. denied defendants' motion for summary judgment, which had requested dismissal of the complaint on the grounds that the agreement was unenforceable because of economic duress. Judge Volkert also denied plaintiffs' cross-motion, which requested summary judgment on their contract and conversion causes of action.

---

[2] The claims included breach of contract (Count One); declaratory judgment to transfer ownership (Count Two); oppression (Count Three); promissory estoppel (Count Four); unjust enrichment (Count Five); breach of fiduciary duty (Count Six); constructive trust (Count Seven); wrongful termination (Count Eight); breach of covenant of good faith and fair dealings (Count Nine); fraud and conversion (Count Ten).

In his written opinion, Judge Volkert found that although both parties appeared to benefit from the deal, "a rational fact finder could well determine that plaintiffs' promise of continued employment with the Rauch companies in exchange for a [fifty percent] equitable share of [the] Rauch companies did not constitute adequate consideration." He found a genuine issue of material fact remained as to "whether or not the alleged [a]greement contained adequate consideration." Regarding the economic duress defense, he found there was a genuine issue of fact about "whether or not defendants' unfettered will was overcome."

The court denied plaintiffs' cross-motion for summary judgment on the contract and conversion claims, concluding as an initial matter, that defendants had only "accepted plaintiffs' factual assertions as true in support of the [m]otion for [s]ummary [j]udgment," and the claims were not barred by judicial estoppel. The court then found there were essential terms that the parties "never agreed to or even discussed." These included "the possibility of transferring ownership interests to other members of the family, assumption of corporate liabilities and debts, and pre-existing encumbrances." Other essential terms were disputed by the parties. These included "the timing of the alleged transfer, the composition/source of the alleged transfer, the

recipients of the alleged transfer, the allocation of the alleged transfer, and the corresponding liability and/or conditions contingent upon or accompanying the transfer." The court denied the cross-motion for summary judgment because "when presented with the terms of the agreement, or lack thereof, the trier of fact would be required to engage in 'sheer speculation' to determine whether the parties lived up to their respective obligations."

Defendants renewed their motion for summary judgment after Judge Volkert's decision, alleging the agreement was unenforceable because of the absence of the essential terms that Judge Volkert had identified. Plaintiffs filed a cross-motion to dismiss certain of defendants' affirmative defenses.[3]

By order dated January 9, 2015, Judge Thomas J. LaConte granted defendants' summary judgment motion in part by dismissing all of the complaint except for Count Four (promissory estoppel) and Count Five (unjust enrichment), and denied plaintiffs' cross-motion for summary judgment in its entirety. In analyzing the four required elements to prove a claim of promissory estoppel, the court found that there was a clear and definite promise to give a fifty percent equity interest in the company, that the

---

[3] These included the failure of consideration defense, the no meeting of the minds defense, and the no clear and definite promise defense.

promise was made with the expectation that it would be relied upon by Eric and Shan, and that Shan and Eric relied upon the promise by continuing to work for another ten months. However, the court found an issue of fact about whether they had incurred a detriment of a definite and substantial nature, which must be incurred in reliance on the promise.

The court dismissed the remaining counts of the complaint, finding that essential terms were missing. In addition to the three missing essential terms found by Judge Volkert, Judge LaConte found the "contract was somewhat illusory from the standpoint that there was no firm commitment [by] Shan and Eric as to how long they would stay in exchange for getting [fifty] percent of this company." It would be "sheer speculation" as to what Eric and Shan agreed to by way of continued employment. Therefore, the agreement was unenforceable.

Defendants filed a motion in limine to exclude from trial any testimony and evidence that was unrelated to the reasonable value of plaintiffs' services for the ten months they worked at the facility. The court's May 4, 2015 order precluded plaintiffs' expert, Gerald V. Rasmussen, from testifying on any matter that was not related to the reasonable value of plaintiffs' services during the ten-month period. The court found that in this case, "the proper measure of damages for promissory estoppel and unjust

enrichment [was] . . . the value of Eric and Shan's services for those ten months, minus what they received." The court rejected plaintiffs' claim that they were entitled to expectation damages, holding that it was "not going to measure damages based upon their owning [fifty] percent of the company."

Trial commenced on the promissory estoppel and unjust enrichment claims. After Eric testified, the court conducted a hearing under N.J.R.E. 104 to determine whether plaintiffs' expert was competent to testify about the reasonable value of plaintiffs' services. During questioning, Rasmussen acknowledged there was nothing in his report that talked about the reasonable value of Eric and Shan's services to the Rauch Companies from August 2009 to June 2010. He was not able to tell the judge how much a person in Eric's position would have been paid by a facility of this size and scope with his duties and responsibilities, but only what an outside management firm would charge. The court excluded Rasmussen's testimony.

The next day, plaintiffs requested that the court take judicial notice of the Department of Labor's Occupational Employment statistics that reported the mean salary for a chief executive was $221,300. The judge observed that, even if he were to take judicial notice of that statistic, it would not be "a terribly compelling piece of evidence." The judge found he had

11

"no competent evidential material . . . that would lead [him] to come up with a rational salary for Eric for those ten months . . . that would create a base line against which we could then litigate the issues involving what the defense says his actual compensation was." The court granted defendants' motion for a directed verdict, and dismissed the remaining counts of the complaint.

On appeal, plaintiffs contend the trial court erred in dismissing their complaint. Plaintiffs argue that the court erred because Stuart and Eric intended to be bound by the agreement, and that it was not illusory or unenforceable. Plaintiffs assert the trial court ruled sua sponte that the agreement lacked consideration, and that the ruling was wrong as a matter of law and fact. Furthermore, plaintiffs contend that the agreement was not rendered unenforceable due to missing terms. Rather, it was error to grant summary judgment because defendants waived their defenses of indefiniteness and lack of consideration by accepting performance from Eric and Shan for ten months.

Plaintiffs assert it was error to deny their initial cross-motion for summary judgment on the contract claim. Also, defendants' defense of "economic duress" was legally insufficient and should have been rejected by the court. Plaintiffs claim that the court's in limine ruling was erroneous, and that they should

not have been limited to proving reliance damages because the proper measure was compensation for their expectations. Therefore, it was error to exclude the testimony of their damages expert.

II.

A.

We review a trial court's orders granting or denying summary judgment under the same standard employed by the motion judge. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). The question is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact, or whether the evidence is so one-sided that one party must prevail as a matter of law. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). However, we review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Here, we agree with the trial court that the agreement between Stuart and Eric was unenforceable because it was lacking essential terms.

"A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each

13                                                          A-4745-14T4

party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531 (1956)) (other citations omitted). Where the "parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Ibid. (citations omitted). "An essential characteristic of an enforceable contract is that its obligations be specifically described in order to enable a court or a trier of fact to ascertain what it was the [promisor] undertook to do." Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 474 (App. Div. 1978) (citations omitted), certif. denied, 79 N.J. 488 (1979). However, an agreement is unenforceable when the parties do not agree to one or more essential terms. Ibid.

The degree of specificity required in the contract terms is even greater when equitable remedies are requested. Alnor Const. Co. v. Herchet, 10 N.J. 246, 250 (1952). This is so because a "precise understanding of all the terms" is required before performance can be enforced. Id. at 250-51.

Essential terms are those that are "[o]f the utmost importance" or are "basic and necessary" to the parties' agreement. Black's Law Dictionary 663 (10th ed. 2014). See also McCoy v. Alden Indus., 469 S.W.3d 716, 725 (Tex. Ct. App. 2015) ("Essential

14

terms are those that the parties would reasonably regard as vitally important elements of their bargain, an inquiry that depends primarily on the intent of the parties."). "Each case, being unique, turns on its facts." Malaker, supra, 163 N.J. Super. at 474. The terms that are deemed "essential" will vary depending on the nature of the underlying agreement. Satellite Entm't Ctr. v. Keaton, 347 N.J. Super. 268, 277 (App. Div. 2002) (noting that "incidental terms . . . do not bar enforcement of the essential agreement between the parties"). "Whether an agreement contains all essential terms, and is therefore enforceable, is a question of law." McCoy, supra, 469 S.W.3d at 725 (citations omitted).

"So long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intention to be bound." Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992) (quoting Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377 (App. Div. 1975)). The Restatement (Second) of Contracts acknowledges that a court may supply "reasonable" terms that may be missing.[4] Restatement (Second) of Contracts § 204. However, the supplying of reasonable terms "is intended to be applied in cases in which the parties failed to

---

[4] We give "considerable weight" to the Restatement. See Pop's Cones, Inc. v. Resorts Intern. Hotel, Inc., 307 N.J. Super. 461, 471 (App Div. 1998) (quoting Mazza v. Scoleri, 304 N.J. Super. 555 (App. Div. 1997)).

agree regarding an issue, generally because they did not anticipate that it would arise or merely overlooked it." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (citing Restatement (Second) of Contracts § 204 (1981)).

Here, Judge Volkert found there were three essential terms missing from the agreement which included 1) the possibility of transferring ownership interest to other family members, 2) assumption of corporate liabilities and debts, and 3) treatment of preexisting encumbrances. Judge LaConte found as an additional missing but essential term that the parties never discussed how long plaintiffs would continue working for the Rauch companies.

There is much discussion in the record by the parties about the timing of the transfer, the composition and source of the transfer, the recipients of the transfer, and the allocation of the transfer. The parties dispute these issues. That said, however, there is no dispute that in August 2009, there was no discussion about giving Daniel an equity interest, or whether plaintiffs would assume the companies' liabilities or debts, the treatment of preexisting encumbrances, or how long plaintiffs would continue to work.

Plaintiffs contend that because these issues were not discussed, they were not important and thus, were not essential to the agreement. It was vitally important to the promisor that

16                                                        A-4745-14T4

Eric and Shan stay. Eric and Shan contend they turned around these financially failing companies, an issue that is not disputed here by Stuart. Stuart acknowledged in the taped conversation that their staying was the raison d'être for his promise to transfer half the equity in his companies. We agree with Judge LaConte that this term was essential and its omission made sufficiently indefinite the obligation undertaken by Eric and Shan that the promise by Stuart should not be enforced as a contract. This was not the type of term the parties would merely overlook. It was central to the agreement.

The parties also did not discuss the companies' debts, liabilities or prior encumbrances. These also were not issues these parties would have overlooked. Eric acknowledged that his parents had "personal guarantees" on the companies, and if the companies failed "it would have meant the end of them." With no discussion of assets and liabilities, the agreement lacked terms "normal to an obligation of this magnitude." Malaker, supra, 163 N.J. Super. at 475.

Although "part performance may give meaning to indefinite terms of an agreement," Restatement (Second) of Contracts § 34 comment c, the fact that Eric and Shan worked for ten months did not define the scope of nor the conditions of their commitment.

It also gave no meaning to the other missing essential terms, which were not supplemented by their performance.

Finding no enforceable contract, the court dismissed most of the complaint on January 20, 2015. Only Count Four (promissory estoppel) and Count Five (unjust enrichment) remained after the court's January 20, 2015 order of dismissal.[5]

B.

Promissory estoppel arises where "[t]he reliance is on a promise, and not on a misstatement of fact, and so the estoppel is termed 'promissory' to mark the distinction." Friedman, supra, 22 N.J. at 536 (citation omitted). "Four separate factual elements must be proved prima facie to justify application of the doctrine." Malaker, supra, 163 N.J. Super. at 479. These include:

> (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise.

---

[5] The remaining counts of the complaint centered on the allegation there was a contract and, having ruled there was not an enforceable contract, those causes of action were dismissed. Plaintiffs have not pursued their claims for wrongful termination, breach of fiduciary duty, or fraud in this appeal and, having not done so, waived any alleged error in the court's order. See Gormley v. Wood-El, 218 N.J. 72, 95 n. 8 (2014); Drinker Biddle v. N.J. Dep't of Law & Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n. 5 (App. Div. 2011) (noting that claims not address in merits brief are deemed abandoned).

A-4745-14T4

> [Pop's Cones, supra, 307 N.J. Super. at 469 (quoting Malaker, supra, 163 N.J. Super. at 479).]

"The essential justification for the promissory estoppel doctrine is to avoid the substantial hardship or injustice which would result if such a promise were not enforced." Ibid. (citing Malaker, supra, 163 N.J. Super. at 484).

Here, the parties did not dispute that Stuart made a promise to Eric of a fifty percent equity interest for continued employment. Based on that promise, the trial court found that the first three elements necessary to establish a claim for promissory estoppel were met. It was the last element, involving a definite and substantial detriment incurred in reliance on the promise, that remained for trial.[6] Plaintiffs asserted no claim of error regarding the court's analysis of the factors.

---

[6] Unjust enrichment is a remedy that may be imposed when there is "no express contract providing for remuneration." Caputo v. Nice-Pak Prods., Inc., 300 N.J. Super. 498, 507 (App. Div.), certif. denied, 151 N.J. 463 (1997). It applies where a plaintiff shows that it "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (citations omitted).

Here, plaintiffs were claiming defendants were unjustly enriched by breaching the agreement and should be estopped from doing so. The court focused its analysis on the promissory estoppel claim.

Plaintiffs sought damages in the litigation for the benefit the Rauch companies received from them, asserting the proper measure was the benefit obtained by the promisor, which in this case was fifty percent of the value of the companies, not their profits. Defendants contended plaintiffs were limited in their damages to the reasonable value of their services, describing the factual issue for trial as the "difference between the compensation [Eric and Shan] received for that ten months and the fair compensation for that ten months," namely, their detriment. The court found that the "proper measure of damages for [the] promissory estoppel and unjust enrichment [causes of action] are . . . the value of Eric and Shan's services for those ten months minus what they received." The trial court rejected plaintiffs' "measure [of] damages based upon their owning [fifty] percent of the company."

The trial court did not err in limiting plaintiffs to reliance rather than expectation damages. A claim for expectation damages requires a court to "ascertain what it was the promisor undertook to do," which cannot be done in the absence of agreement on essential terms. Malaker, supra, 163 N.J. Super. at 474. Here, the agreement lacked essential terms.

Where an agreement is unenforceable because of a lack of essential terms, a party may still be entitled to the reasonable

value of his services based on the promise.  See Restatement (Second) of Contracts § 90 comment d (where the promise central to a claimed expectation interest is unenforceable because of lack of definitiveness, "relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise").  The Restatement explained through illustration 10 in the comments to Section 90 that the promisee of a franchise agreement where negotiations collapse is "entitled to his actual losses . . . and for his moving and temporary living expenses," but "is not entitled to lost profits . . . or to his expectation interest in the proposed franchise."  Pop's Cones, supra, 307 N.J. Super. at 471 (citing Restatement (Second) of Contracts, § 90 comment d, illustration 10 (1979)).  Thus, we agree with the trial court that plaintiffs' remedy was limited to the extent of their detrimental reliance on the promise, and not to the extent of their expectations.

As a general matter, substantial deference is given to a trial judge's evidentiary rulings.  State v. Morton, 155 N.J. 383, 453 (1998), cert. denied, 532 U.S. 931, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001).  The trial court did not abuse its discretion by excluding testimony from plaintiffs' expert.  The expert acknowledged he could not address the reasonable value of

plaintiffs' services to the Rauch companies during the ten months Eric and Shan remained. Although plaintiffs presented the trial court with general statistics compiled by the Department of Labor, the trial court did not abuse its discretion by declining to rely upon those statistics, which did not provide a fair market value for the services that these plaintiffs provided to the companies. Without creditable proof of damages, the court did not err in directing a verdict in defendants' favor on the remaining two counts of the complaint.[7]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] Plaintiffs' claim the court erred by not dismissing defendants' economic duress defense is irrelevant given our decision on the other issues and does not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-4745-14T4