**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1343-20

JESSICA SCIARETTA,

    Plaintiff-Appellant,

v.

DOMINIC SCIARETTA,

    Defendant-Respondent,

and

DONALD J. SCIARETTA,
TRUSTEE FOR THE DONALD
J. SCIARETTA FAMILY
DYNASTY TRUST
AGREEMENT OF 2003,

    Third-Party
    Defendant-Respondent.

_____

Argued April 27, 2021– Decided June 16, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0682-20.

Jan L. Bernstein argued the cause for appellant (Phillips Nizer, LLP, attorneys; Jan L. Bernstein, on the briefs).

Daniel M. Serviss argued the cause for respondent Dominic Sciaretta (Greenbaum, Rowe, Smith and Davis, LLP, attorneys; Daniel M. Serviss, of counsel and on the briefs).

Benjamin Clarke argued the cause for respondent Donald J. Sciaretta, Trustee for the Donald J. Sciaretta Family Dynasty Trust Agreement of 2003 (DeCotiis, FitzPatrick, Cole & Giblin, LLP, attorneys; Michael Profita, on the briefs).

PER CURIAM

In a prenuptial agreement, defendant Dominic Sciaretta agreed plaintiff Jessica Sciaretta would have title to their marital home if they divorced; she agreed to waive any rights to alimony and equitable distribution. Now that she has filed for divorce, Dominic,[1] contrary to their agreement, and his father Donald J. Sciaretta contend Jessica cannot have title to the house because it is owned by a trust created by The Donald J. Sciaretta Family Dynasty Trust Agreement of 2003, of which Dominic is a beneficiary and Donald is the trustee. The motion judge granted Donald's motion to dismiss Jessica's equitable- and promissory-estoppel claims against Donald as trustee for failure to state a claim

---

[1] We use first names for ease of reading and mean no disrespect.

on which relief could be granted and denied Jessica's cross-motion to add additional allegations about Donald. We granted Jessica leave to appeal that decision and now reverse.

We review de novo a ruling on a motion to dismiss a complaint for failure to state a claim under Rule 4:6-2(e), giving no deference to the trial court's conclusions. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019); Radiation Data, Inc. v. N.J. Dep't of Env't Prot., 456 N.J. Super. 550, 558 (App. Div. 2018). We apply the same standard the motion judge was required to apply: whether the pleadings even "suggest[]" a basis for the requested relief. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). At this preliminary stage, we are not concerned with a plaintiff's ability to prove her allegations in the complaint. Ibid.; MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 309 (App. Div.), certif. denied, 244 N.J. 243 (2020). Because our "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint," Printing Mart, 116 N.J. at 746, we begin by reviewing Jessica's pleadings.

Before Jessica and Dominic married, Donald was "heavily involved" in the selection of a marital home for them. The parties purchased a house located in Peapack as Jessica's and Dominic's marital home "through" the trust, which funded the purchase and subsequent maintenance of the home. Donald, Dominic, and Jessica viewed this house to be the couple's starter home.

Eighteen days before their wedding, Dominic used pliers to forcibly remove the diamond from Jessica's engagement ring while she was wearing it, bruising her in the process. While that incident was "still raw," Dominic demanded Jessica sign a prenuptial agreement.

Expressly referencing the Peapack house, paragraph 4(B)(i) of the agreement provided:

> In the event of the Cessation of the Marriage, and so long as there is a child or children born to, or adopted by, Husband and Wife during the Marriage, Wife shall receive title to the home at [], Peapack, New Jersey 07977 where the Parties currently reside or any subsequent residence in which the Parties reside at the time of the Cessation of the Marriage, free and clear of any liens, taxes, any and all liabilities, or other encumbrances (the Marital Residence). Upon the Cessation of the Marriage, exclusive occupancy of the Marital Residence shall be awarded to the Wife. The Husband agrees to include in his last will and testament a provision in accordance with the terms of this Section 4(B)(i).

4

Jessica agreed to "waive[] any right to a division of assets that would otherwise arise by reason of the [m]arriage (including but not limited to equitable distribution of property under N.J.S.A. § 2A:34-23, as amended), as well as any right to receive alimony or spousal support."

Jessica and Dominic[2] executed the agreement on April 15, and 16, 2015, respectively, and were married on April 18, 2015. Later that year, they moved into the marital home. They have three children, a boy born in 2016 and twin boys born in 2018.

Jessica filed a complaint for divorce on February 28, 2020. In an amended complaint Jessica included promissory- and equitable-estoppel against Dominic and Donald as trustee. She asserted Donald's actions as trustee "in consistently contributing financial support to the parties to the extent necessary to maintain the marital lifestyle constitute an implied promise" and that Donald "clearly made such implied promises with the intent that [Jessica] would rely on them."

Donald moved to dismiss Jessica's amended complaint with prejudice pursuant to Rule 4:6-2(e), arguing her claims against him were barred as a matter

---

[2] Although he signed a prenuptial agreement giving title to their home to Jessica if they divorced, Dominic certified in opposition to her cross-motion their "conversations always revolved around the fact that [he] could never own a home in [his] own name due to the bonding exposure that [he] face[d] from [his] construction company."

of law because Jessica could not compel a distribution from the trust when Donald had sole discretion to make distributions and that she had failed to plead sufficiently her promissory- and equitable-estoppel claims against him.

Jessica opposed Donald's motion and cross-moved, asking the court to grant her leave to file a "second amended complaint for divorce" and to "adopt section 50 of the Restatement (Third) of Trusts." In her proposed second amended complaint, Jessica made additional allegations regarding Donald's involvement in the negotiation of the prenuptial agreement, including that Dominic told her Donald required she sign the agreement before they married; the attorney who represented Dominic in the negotiation, drafting, and execution of the agreement represented Donald for his corporate and trust work and had drafted The Donald J. Sciaretta Family Dynasty Trust Agreement of 2003; and Dominic told Jessica Donald had agreed the marital home would be transferred to her in the event of a divorce as long as a child had been born or adopted of the marriage. She also alleged:

> At the time of the execution of the Prenuptial Agreement, [Jessica, Dominic] and [Donald] knew that the marital home was owned by the Dynasty Trust. With this knowledge, both [Jessica and Dominic] entered into the Prenuptial Agreement with the consent of [Donald]. [Jessica] relied on the representations of [Donald] and the clear terms of the Prenuptial Agreement that the home would be transferred to her

A-1343-20

from the Dynasty Trust in the event of a divorce and that the children would be supported by the Dynasty Trust to allow her to remain at home to care for them.

. . . .

The intent of the Prenuptial Agreement to provide [Jessica] with the marital home for the benefit of the children and to provide her with sufficient support so that the children could maintain their accustomed standard of living was clear both from the implied promises and conduct of [Donald] of which there are examples above and also from his express representations. Prior to and throughout the marriage [Donald] repeatedly represented that the marital home purchased by The Dynasty Trust for [Jessica and Dominic] prior to their marriage would be transferred to [them]. [Donald] in multiple conversations directed [Jessica and Dominic] to choose a home, and made clear that The Dynasty Trust would buy the home and then transfer title to [them]. Even as problems developed in the marriage, [Donald] made clear through his express statements that the Prenuptial Agreement would ensure that the children of the marriage always had a home, understanding that the Prenuptial Agreement required the transfer of the home to [Jessica] if the parties divorced.

Jessica argued additional discovery was necessary to corroborate that the intent of the agreement was to transfer title of the marital home from the trust to her if she and Dominic divorced. In a certification in support of her cross-motion and in opposition to Donald's motion, Jessica stated she had told Dominic "if he wanted [her] to waive alimony" in the agreement, she "had to

7

have the house so [she] would have a roof over the head of [their] future children."  She also certified she would not have signed the agreement and waived alimony if she had not been "assured" the home would be transferred to her.  In further support of her cross-motion, Jessica submitted her father's certification, in which he said Donald had "clearly told [him] that he intended for the prenuptial agreement to always provide a home for the children."

Donald filed a reply certification, asserting he was not a party to the agreement, had no involvement in any negotiations or discussions about the agreement before its execution,[3] and had never made any promises that the trust would give the Peapack house to Dominic or Jessica.  Dominic submitted a certification in which he denied discussing the agreement with Donald and stated Jessica knew he did not own the marital home when they signed the agreement.

---

[3] Opposing Jessica's cross-motion, Donald certified he "did not have any involvement in the negotiations or discussions leading up to the execution of the Prenuptial Agreement."  In his brief opposing Jessica's motion for leave to appeal, Donald represented only that he was "not present for any of the discussions or negotiations between the parties regarding the Premarital Agreement."  In his supplemental brief, he asserted he was "not a party to any of the discussions pertaining to the Prenuptial Agreement," citing the signature page of the agreement.

A-1343-20

After oral argument, the motion judge in a written decision and order granted Donald's motion to dismiss plaintiff's amended complaint for "failure to state a claim upon which relief may be granted." The judge found Donald was not a party to the agreement, was not bound by its terms, and had not agreed to transfer title of the Peapack house and held a court could not compel Donald to deliver title to the house, citing Restatement (Second) of Trusts § 187[4] and Tannen v. Tannen, 416 N.J. Super. 248 (App. Div. 2010), aff'd, 208 N.J. 409 (2011).[5] Additionally, the motion judge found Jessica's pleadings to be insufficient to support her promissory- and equitable-estoppel claims because Jessica had failed to establish the trust provided "continuous financial support

---

[4] Although the motion judge cited to this section of the Restatement, she failed to address in the context of the factual allegations and reasonable factual inferences of this case its express language providing the court a role in "prevent[ing] an abuse by the trustee of his discretion." Restatement (Second) of Trusts § 187 (Am. Law Inst. 2012). In an apparent attempt to avoid that language, Donald relies on N.J.S.A. 3B:31-38, which limits the rights of a trust beneficiary's creditor. However, in her promissory- and equitable-estoppel claims, Jessica brings direct claims against Donald for his actions as trustee of the trust and is not acting simply as Dominic's creditor.

[5] The motion judge erred in relying on Tannen. The decision at issue in Tannen was made after a trial that took "several months" to complete, not at the preliminary stages of the case. Id. at 254. Tannen also did not have the following critical facts or reasonable factual inferences present in this case: before the execution of a prenuptial agreement in which a party waived any entitlement to alimony or equitable distribution, that party was told the title of the marital home would be transferred to her in the event of a divorce.

throughout the marriage" to "induce reliance" because "[b]eing supported throughout the marriage did not induce [Jessica] to forbear a legal right." Even though the judge recognized that Jessica's cross-motion "appears to address [Donald's] allegations of the sufficiency of the pleadings," the court refused to allow her to file her proposed second amended complaint with its additional allegations about Donald. The motion judge permitted Jessica to file a second amended complaint "in the interest of justice . . . [because she and Dominic] are entitled to be divorced" but held "the court will not entertain similar claims against" Donald, effectively denying her motion.

On appeal, Jessica argues the motion judge erred by failing to view the pleadings in the light most favorable to her and contends she pleaded sufficient facts about her reliance on Donald's promises, conduct, and express representations before entering into the prenuptial agreement to support her equitable- and promissory-estoppel claims against him. Because Donald is the only person who can give effect to the agreement, Jessica asserts Donald is an indispensable party, which precludes his dismissal.

In response, Donald and Dominic argue, among other things, the motion judge's decision is entitled to deference, the motion judge properly applied Tannen, and Jessica failed to plead sufficient facts supporting her estoppel

claims. Donald asserts the motion judge did not decide the motion based on disputed facts; Dominic contends the motion to dismiss was converted into a summary-judgment motion and should be affirmed under a summary-judgment standard.

In Knorr v. Smeal, 178 N.J. 169, 178 (2003), our Supreme Court explained that the equitable-estoppel doctrine is:

> "founded in the fundamental duty of fair dealing imposed by law." Casamasino v. City of Jersey City, 158 N.J. 333, 354 (1999). The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment. The doctrine is invoked in "the interests of justice, morality and common fairness." Palatine I v. Planning Bd., 133 N.J. 546, 560 (1993) (quoting Gruber v. Mayor of Raritan Township, 39 N.J. 1, 13 (1962)). Estoppel, unlike waiver, requires the reliance of one party on another. In short, to establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment.
>
> [Ibid. (citations omitted).]

"The essential principle of the policy of estoppel . . . is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Summer Cottagers' Ass'n of Cape May v. City of Cape

May, 19 N.J. 493, 503-04 (1955); see also Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 59 (App. Div. 2019). Equitable estoppel does not require proof of fraudulent intent. Hendry v. Hendry, 339 N.J. Super. 326, 336 (App. Div. 2001).

Promissory estoppel "requires that a promise has been made, that the promise was made with the expectation it be relied upon, that the moving party reasonably relied on the promise, and that the promisee incurred a detriment due to that reliance when the promisor broke the promise." Goldfarb v. Solimine, 245 N.J. 326, 341 (2021). Our Supreme Court "has long emphasized that promissory estoppel is 'a departure from the classic doctrine of consideration that the promise and the consideration must purport to be the motive each for the other,' providing instead that the operative 'reliance is on a promise.'" Id. at 340 (quoting Friedman v. Tappan Dev. Corp., 22 N.J. 523, 536 (1956)). Promissory estoppel "employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." Ibid. (quoting Raedeke v. Gibraltar Sav. & Loan Ass'n, 517 P.2d 1157, 1161 (Cal. 1974)).

In dismissing Jessica's estoppel claims and in refusing to allow her to amend her complaint to add allegations about Donald, the motion judge erred in

12

failing to follow the oft-quoted tenet that courts deciding motions to dismiss must "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Printing Mart, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). Even though she recognized Jessica's cross-motion "appears to address [Donald's] allegations of the sufficiency of the pleadings," and having made no finding of prejudice or futility, see Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 298 (App. Div. 2010), the motion judge inexplicably refused to allow Jessica to include in her second amended complaint those allegations that would cure the purported deficiencies.

The motion judge erred in failing to accept Jessica's factual allegations as true, see MasTec, 462 N.J. Super. at 308-09, and in failing to give her "every reasonable inference of fact," Printing Mart, 116 N.J. at 746. Instead, the judge made an improper finding of fact, concluding Donald "did not agree to the transfer."[6] Had the judge adhered to the correct standard, she would have

---

[6] In their appellate briefs, Donald contends the motion judge did not make any factual determinations, but Dominic concedes the motion judge made factual determinations. Dominic then asserts the judge converted the motion to a summary-judgment motion, even though the judge did not apply the summary-

13                                                                          A-1343-20

accepted as true Jessica's allegations that: Donald was "heavily involved" in the purchase of the Peapack house and viewed it to be Dominic's and Jessica's starter home; the parties purchased the Peapack house "through" the trust; after the purchase of the house and after he bruised her while using pliers to remove the diamond from her engagement ring, Dominic demanded Jessica sign a prenuptial agreement; and she was promised she would have title to the Peapack house in the event of a divorce if she waived any right to alimony or equitable distribution, which she did.

It is not a far or unreasonable stretch to infer from those facts that Donald as trustee induced Jessica to execute the prenuptial agreement and "forbear" any legal right to equitable distribution or alimony from Dominic, who is Donald's son and a beneficiary of the trust, by agreeing to transfer title of the house to her

judgment standard in deciding the motion. "If the court considers evidence beyond the pleadings in a Rule 4:6-2(e) motion, that motion becomes a motion for summary judgment, and the court applies the standard of Rule 4:46." Dimitrakopoulos, 237 N.J. at 107. Even under a summary-judgment standard, the motion judge should have denied the motion. Summary judgment is premature when the opposing party has not had an opportunity to complete discovery, Crippen v. Cent. Jersey Concrete Pipe Co., 176 N.J. 397, 409 (2003), particularly when critical facts are in the sole possession of the moving party, Bilotti v. Accurate Forming Corp., 39 N.J. 184, 206 (1963). Here, the judge granted the motion before Jessica had an opportunity to depose Donald or Donald's attorney, who had prepared both the trust agreement and the prenuptial agreement.

in the event of a divorce. That inference makes particular sense when, as all parties agree, everyone knew Donald as trustee controlled title to the house, and, as Dominic asserts, everyone knew he could never own a home in his own name. Why else would Jessica relinquish any right to equitable distribution or alimony but for the promise — from the one person who could make it — of keeping a roof over her and the children post-divorce?

With those facts and reasonable factual inferences, Jessica's proposed second amended complaint and even her amended complaint "suggested" a cause of action under both equitable- and promissory-estoppel principles and those claims should have survived the motion to dismiss. See Printing Mart, 116 N.J. at 746 (quoting Velantzas, 109 N.J. at 192).

On a motion to dismiss, a plaintiff's obligation is "not to prove the case but only to make allegations which, if proven, would constitute a valid cause of action." Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (App. Div. 2001); see also Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005). Jessica met that obligation. We express no opinion about the ultimate merits of Jessica's claims. We hold only that the refusal to allow her to amend her pleadings with additional allegations concerning Donald and the dismissal of her claims under Rule 4:6-2(e) were improper.

15                                                        A-1343-20

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                                    A-1343-20